UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BRIDGE FUND CAPITAL CORPORATION,       No. 2:08-cv-00767-MCE-EFB
a California Corporation; and
BIG BAD 1, LLC, a California
limited liability company,

       Plaintiffs,

     v.                                   MEMORANDUM AND ORDER

FASTBUCKS FRANCHISE
CORPORATION, a Nevada
corporation; and CHARLES
HORTON, an individual; and
DOES 1-50,

       Defendants.

----oo0oo----

    Plaintiffs Bridge Fund Capital Corporation ("Bridge Fund")
and Big Bad 1, LLC ("Big Bad") (hereinafter collectively referred
to as "Plaintiffs") seek monetary and injunctive relief against
Defendants FastBucks Franchise Corporation ("FastBucks"), Charles
Horton, ("Horton"), and Does 1-50 (hereinafter collectively
referred to as "Defendants"), arising out of a dispute regarding
payday loan and check cashing franchises operated by Plaintiffs
in California.

1

1    Presently before the Court is Defendants' Motion to Dismiss
2    under Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6), or
3    alternatively, to Stay the Action pending Arbitration.
4    Defendants' Motion alleges that Plaintiffs are bound to submit
5    their claims to arbitration in Texas pursuant to their respective
6    franchise agreements with FastBucks.  Thus, according to
7    Defendants, this Court does not have jurisdiction to hear
8    Plaintiffs' claims.  For the reasons set forth below, Defendants'
9    Motion to Dismiss or Stay the Action is DENIED.[2]

11                           **BACKGROUND**[3]

13    In 2006, each Plaintiff executed separate franchise
14    agreements with FastBucks for the operation of payday loan and
15    check cashing franchises within California.  Bridge Fund operates
16    its franchise in Montclair, California, and Big Bad operates its
17    franchise in Stockton, California.  FastBucks is a Nevada
18    Corporation with its principal place of business in Texas.
19    Horton was, at all relevant times herein, the Chief Executive
20    Officer of FastBucks and a member of its Board of Directors.
21    ///
22    ///

23    _____

24    [1] Unless otherwise stated, all further references to a Rule
25    are to the Federal Rules of Civil Procedure.

26    [2] Because oral argument will not be of material assistance,
      the Court orders this matter submitted on the briefs.  E.D. Cal.
27    Local Rule 78-230(h).

28    [3] The factual assertions in this section are based on the
      allegations in Plaintiffs' Complaint unless otherwise specified.

1  Plaintiffs allege that Horton's ownership of the vast majority of
2  FastBucks' common and preferred stock constitutes a joint
3  enterprise between Defendants.

4      Plaintiffs assert that FastBucks has been offering payday
5  lending franchises via franchise agreements, a written Uniform
6  Franchise Offering Circular ("UFOC"), a website, and other
7  materials, since at least 2003.  Further, Plaintiffs allege that
8  Horton was and is actively involved in the marketing of FastBucks
9  franchises to Plaintiffs and others.  FastBucks' franchise
10  marketing allegedly included representations of a unique system
11  with substantial forms and training, a manual for the business
12  system, and forms and collections materials for loans which were
13  proper for use in California.

14      Plaintiffs' respective franchise agreements with FastBucks
15  each contain an arbitration provision requiring all disputes
16  arising between the parties to be resolved through arbitration
17  primarily under the rules of the American Arbitration Association
18  ("AAA").  These franchise agreements also contained choice of law
19  and choice of forum provisions requiring any dispute to take
20  place in Texas in accordance with Texas law.

21      Plaintiffs received UFOCs from FastBucks in conjunction with
22  the franchise agreements.  These UFOCs contained an addendum
23  pertaining to the enforcement of the franchise agreements under
24  California law ("California Appendix").  Plaintiffs claim that
25  the California Appendix modifies the franchise agreements so that
26  they are in compliance with California law, and this compliance
27  requires Plaintiffs' disputes with Defendants to be resolved in
28  California in accordance with California law.

Further, Plaintiffs claim that the arbitration provisions included in the franchise agreements are unenforceable as they are both procedurally and substantively unconscionable under California law.  Plf's Mem. in Opp. to Def's Mot. at 9-20.

On February 28, 2008, Plaintiffs filed their Complaint in state court alleging breach of written franchise contracts, fraud and deceit, negligent misrepresentation, violation of the California Franchise Investment Law ("CFIL"), and unfair trade practices under the California Business and Professions Code § 17200.  Plaintiffs seek damages, declaratory relief, and injunctive relief including the rescission of the franchise agreements.  Plaintiffs allege Defendants made material misrepresentations and omissions regarding Defendants' franchises.  Specifically, Plaintiffs allege that FastBucks has no proven franchise system, no business manual, and provided little training and forms improper for use in California. Plaintiffs allege they learned of the franchise system's non-compliance with California law only after an inspection by the State of California.

On April 9, 2008, Defendants successfully removed the action to this Court under diversity jurisdiction.

On May 30, 2008, Defendants filed this Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), or alternatively, to Stay the Action pending Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 3 ("FAA").

///

///

///

4

Defendants allege that arbitration, in Texas, under Texas law, is the required dispute resolution forum for Plaintiffs' claims, pursuant to their respective franchise agreements with FastBucks. They urge the Court to dismiss this action on that basis.

**STANDARD**

**A.   Motion to Dismiss - 12(b)(1)**

In moving to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the challenging party may either make a "facial attack" on the allegations of jurisdiction contained in the complaint or can instead take issue with subject-matter jurisdiction on a factual basis ("factual attack").  Thornhill Publ'g Co. v. General Tel. & Elect. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  If the motion constitutes a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Thornhill, 594 F.2d at 733 (quoting Mortensen, 549 F.2d at 891).  When resolving a factual attack, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

///

///

///

1    **B.    Motion to Dismiss - 12(b)(6)**

2

3        On a motion to dismiss for failure to state a claim under

4   Rule 12(b)(6), all allegations of material fact must be accepted

5   as true and construed in the light most favorable to the

6   nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

7   337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and

8   plain statement of the claim showing that the pleader is entitled

9   to relief," in order to "give the defendant fair notice of what

10  the... claim is and the grounds upon which it rests."  Conley v.

11  Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

12  While a complaint attacked by a Rule 12(b)(6) motion to dismiss

13  does not need detailed factual allegations, a plaintiff's

14  obligation to provide the "grounds" of his "entitlement to

15  relief" requires more than labels and conclusions, and a

16  formulaic recitation of the elements of a cause of action will

17  not do.  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65

18  (2007) (internal citations and quotations omitted).  Factual

19  allegations must be enough to raise a right to relief above the

20  speculative level.  Id. at 1965 (citing 5 C. Wright & A. Miller,

21  Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)

22  ("The pleading must contain something more... than... a statement

23  of facts that merely creates a suspicion [of] a legally

24  cognizable right of action").

25      If the court grants a motion to dismiss a complaint, it must

26  then decide whether to grant leave to amend.  The court should

27  "freely give" leave to amend when there is no "undue delay, bad

28  faith[,] dilatory motive on the part of the movant... undue

1  prejudice to the opposing party by virtue of... the amendment,

2  [or] futility of the amendment...." Fed. R. Civ. P. 15(a); <u>Foman</u>

3  <u>v. Davis</u>, 371 U.S. 178, 182 (1962).  Generally, leave to amend is

4  only denied when it is clear that the deficiencies of the

5  complaint cannot be cured by amendment.  <u>DeSoto v. Yellow Freight</u>

6  <u>Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).

7

8  **ANALYSIS**

9  **A.   Choices of Law and Forum**

10

11  "Federal Courts sitting in diversity must apply 'the forum

12  state's choice of law rules to determine the controlling

13  substantive law.'" <u>Fields v. Legacy Health Sys.</u>, 413 F.3d 943,

14  950 (9th Cir. 2005) (quoting <u>Patton v. Cox</u>, 276 F.3d 493, 495

15  (9th Cir. 2002)).  In the instant case, Plaintiffs filed their

16  complaint in California, therefore California's choice-of-law

17  rules apply.

18  California courts have evidenced a strong policy in favor of

19  the enforcement of choice of law provisions.  <u>Omstead v. Dell,</u>

20  <u>Inc.</u>, 473 F. Supp. 2d 1018, 1023 (N.D. Cal. 2007).  Further,

21  "where both a forum-selection clause and a choice-of-law clause

22  are at issue, the question of the enforceability of the

23  forum-selection clause is 'inextricably bound up' in the question

24  of the validity of the choice-of-law provision." <u>Id</u>. (citing

25  <u>Hall v. Superior Court</u>, 150 Cal. App. 3d 411, 416 (4th Dist.

26  1983)).

27  ///

28  ///

1  Enforceability of these provisions is determined under the

2  principles set forth in § 187 of the Restatement of Conflict of

3  Laws, through which they are generally enforced except where

4  either of two exceptions exist.  <u>Omstead</u>, 473 F. Supp. 2d at 1023

5  (citing <u>Nedlloyd Lines B.V. v. Superior Court of San Mateo</u>

6  <u>County</u>, 3 Cal. 4th 459, 464-65 (Cal. 1992)).  The exceptions

7  exist where either:

> (a) the chosen state has no substantial relationship to
8  the parties or the transaction and there is no other
9  reasonable basis for the parties choice, or (b) the
   application of the law of the chosen state would be
10 contrary to a fundamental policy of a state which has a
   materially greater interest than the chosen state in
11 the determination of the particular issue....

12 Restatement (Second) of Conflict of Laws § 187(2) (1971).

13     Defendants have adequately shown that Texas has a

14 substantial relationship to the parties and transaction, and thus

15 the first exception does not apply.  In their Motion, Defendants

16 note that FastBucks' principal place of business is in Texas and

17 that the franchise agreements were formed in Texas.  Def's Mot.

18 to Dis. 2:4-7.  Defendants also state that Plaintiffs received

19 training in Texas, and transfer their royalty and franchise fees

20 to Texas.  <u>Id</u>. 2:7-10.  Therefore, there is a reasonable basis

21 for the parties' choice of Texas law, and Plaintiffs correctly do

22 not challenge the provision under this exception.

23     On the contrary, Plaintiffs assert that the application of

24 Texas law to the dispute at issue is in conflict with fundamental

25 California public policy, and that California has a materially

26 greater interest than Texas in the dispute at hand.  <u>See</u> Rest.

27 (Second) of Conf. of Laws § 187(2).

28 ///

1   Specifically, Plaintiffs argue that their unwaivable statutory
2   rights under the CFIL would be effectively waived if Texas law
3   were applied, as the franchise agreements' forum selection and
4   choice of law provisions would "subject California franchisees to
5   litigation in a state that does not provide the same level of
6   legal protections afforded by California law." America Online,
7   Inc. v. Superior Court, 90 Cal. App. 4th 1, 10 (1st Dist. 2001)
8   (refusing to enforce a franchise agreement's Virginia choice of
9   law and forum provisions when unwaivable statutory rights were at
10  issue).  Moreover, Defendants have the burden of showing that
11  enforcement of the two provisions would not diminish Plaintiffs'
12  rights under California law.  Id.; See also  Nagrampa v.
13  MailCoups, Inc., 469 F.3d 1257, 1289 (9th Cir. 2006) (noting that
14  both the CFIL and CLRA shift the burden of proof on enforcement
15  of choice of law and forum to the franchisor); Smith v. Paul
16  Green School of Rock Music Franchising, LLC, 2008 WL 2037721, at
17  *4 (C.D. Cal. 2008) (noting that the CFIL provides special
18  protection to franchisees and thus franchisors have "the burden
19  of proof on enforcement of the forum selection and choice of law
20  clauses").

21       California has "a materially greater interest" than Texas in
22  the instant case.  Rest. (Second) of Conf. of Laws § 187(2).  As
23  noted by the California Court of Appeal in Wimsatt v. Beverly
24  Hills Weight etc. Internat., Inc., the CFIL is "one of the most
25  important protections California offers its franchisee citizens."
26  32 Cal. App. 4th 1511, 1520 (4th Dist. 1995).  Application of
27  Texas law would deprive Plaintiffs of this protection.
28  ///

In contrast, Texas' interest in applying its law is confined to its more general interest in enforcing the arbitration provisions of agreements made by its residents.  Thus, California has evidenced a materially greater interest in protecting its franchisee citizens under the provisions of the CFIL.

Defendants dispute the weight of California's interest in the present action, and assert that the application of Texas law would not be contrary to a fundamental California policy.  This argument is not persuasive.  Defendants base their assertions on Plaintiffs' non-CFIL claims, stating that none of these claims have been shown to be fundamental under California law.  Without addressing this issue, this Court finds that Plaintiffs' CFIL claims are fundamental, and thus Plaintiffs' unwaivable statutory rights under the CFIL must be protected.[4]

Defendants seek to avoid this problem by asserting that this Court can simply order them not to preclude application of the CFIL by barring any assertion that the Texas choice of law provision should be applied in a Texas arbitral forum.

///

///

_____

[4] This holding applies solely to the determination of the choice of law and forum matters at issue; the Court does not find that Plaintiffs' CFIL claims require a judicial forum. Defendants argue that the U.S. Supreme Court preempted the non-waiver provision of the CFIL under the FAA, and thus arbitration under Texas law is required.  Southland Corp. v. Keating, 465 U.S. 1 (1984).  However, the FAA preemption in Southland simply states that the CFIL cannot require judicial resolution of CFIL claims because of a direct conflict with the FAA's policy precluding states from singling out arbitration provisions for suspect status.  Id. at 10.  This Court's determination of the choice of law and forum provisions in reference to the CFIL simply speaks to Texas law and forum requirements, and does not seek to mandate a judicial forum for all CFIL claims.

10

1  Defendants cite <u>Paul Green</u> from the Central District of

2  California for support, wherein the court held Pennsylvania

3  choice of law and choice of forum provisions were enforceable,

4  where the plaintiff's rights under the CFIL would be protected.

5  2008 WL 2037721 at *5.  The court in <u>Paul Green</u> based their

6  decision in part on the defendant's agreement not to assert the

7  Pennsylvania choice of law provision in an attempt to preclude

8  application of the CFIL.  <u>Id</u>.

9      However, <u>Paul Green</u> is distinguishable from the instant case

10 on this issue.  There, the defendant's enforceability argument

11 was also supported by relevant Pennsylvania case law enforcing

12 the CFIL in a Pennsylvania forum, stating that the CFIL "is

13 'fundamental public policy' of California, that California had a

14 materially greater interest in having its law applied, and that

15 the CFIL offered a higher degree of protection to franchisees

16 than Pennsylvania common law."  <u>Id</u>. (citing <u>Cottman Transmission</u>

17 <u>Sys., LLC v. Kershner</u>, 492 F. Supp. 2d 461, 467-71 (E.D. Pa.

18 2007).  As noted by the defendant in <u>Paul Green</u>, "it is well

19 established by case law within the judicial district where the

20 arbitration is to occur that the non-waivable statutory rights of

21 California franchisees are recognized and enforced,

22 notwithstanding a Pennsylvania forum with a contractual

23 Pennsylvania choice of law clause."  <u>Id</u>.  Defendants fail to

24 highlight any similar cases supporting the enforcement of the

25 CFIL in a Texas forum, and a search of the relevant case law has

26 also failed to uncover any such case.

27 ///

28 ///

11

1  Therefore Defendants' concession is insufficient assurance that
2  Plaintiffs' rights under the CFIL would be protected in a Texas
3  forum applying Texas law.

4       Defendants have failed to show that Plaintiffs' rights would
5  not be diminished if the choice of law and forum provisions were
6  enforced.  This failure, combined with California's strong
7  interest in the dispute and its fundamental policies and
8  protections provided to Plaintiffs under the CFIL, renders these
9  provisions unenforceable.  Accordingly, Plaintiffs' rights
10 require the instant action to be decided under California law,
11 within California's borders.  Therefore, this Court now moves on
12 to an examination of whether this dispute should be determined in
13 an arbitral or judicial forum, based on the alleged
14 unconscionability of the franchise agreements' arbitration
15 provisions under California law.

16

17       **B.    Enforceability of Arbitration Provision**[5]

18

19       The United States Supreme Court has expressed a strong
20 policy in favor of enforcing arbitration agreements, stating that
21 under the FAA, arbitration agreements between private parties
22 must be "rigorously enforced."

23 ──────────
24       [5] Plaintiffs' Complaint seeks declaratory relief from this
   Court stating that "provisions" of the franchise agreements are
25 unconscionable and thus are unenforceable, but does not
   specifically mention arbitration.  However, given the notice
26 pleading structure of the Federal System, and the content of the
   filings by both parties, this Court finds that the Defendants
27 were properly notified that Plaintiffs are seeking a judgment
   declaring the arbitration provisions unenforceable as
28 unconscionable.  Thus, Plaintiff's lack of specific challenge to
   the arbitration provision in the Complaint is immaterial.

1  <u>Perry v. Thomas</u>, 482 U.S. 483, 490, 107 S. Ct. 2520, 2526 (1987).

2  When a contract contains an arbitration clause, there is a

3  presumption of arbitrability.  <u>AT & T Techs., Inc. v. Commc'ns</u>

4  <u>Workers of America</u>, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419

5  (1986).  Arbitration should be compelled unless it is clear that

6  the dispute is not covered by the arbitration agreement.  <u>United</u>

7  <u>Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363

8  U.S. 574, 582-583 (1960).  Any doubts should be resolved in favor

9  of arbitration.  <u>Id</u>. at 583.  In making this decision, the court

10 looks only at whether the parties agreed to arbitrate the claim,

11 not to the merits of the claim itself.  <u>AT & T Techs.</u>, 475 U.S.

12 at 649-650.

13      If the existence of an arbitration agreement between the

14 parties is proven or undisputed, the party opposing arbitration

15 has the burden of proving any fact necessary to its defense.

16 <u>Engalla v. Permanente Medical Group, Inc.</u>, 15 Cal. 4th 951, 972

17 (1997).  Under the FAA, arbitration agreements "shall be valid,

18 irrevocable, and enforceable, save upon such grounds as exist at

19 law or in equity for the revocation of any contract."  9 U.S.C. §

20 2.  "Thus, generally applicable contract defenses, such as fraud,

21 duress, or unconscionability, may be applied to invalidate

22 arbitration agreements without contravening" federal law.

23 <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687, 116 S.

24 Ct. 1652 (1996).

25      The parties do not dispute the existence of individual

26 franchise agreements between FastBucks and each Plaintiff which

27 contain arbitration provisions that encompass the claims at

28 issue.

As such, Plaintiffs have the burden to prove these arbitration
provisions were unconscionable at the time of signing, and are
therefore unenforceable under general principles of contract law.
Engalla, 15 Cal. 4th at 972.

When an opposing party's defense rests on the contract
principle of unconscionability, the party must prove both
procedural and substantive unconscionability to overcome the
statutory presumption in favor of arbitration.  Circuit City
Stores, Inc. v. Ahmed, 283 F.3d 1198, 1199 (9th Cir. 2002);
Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th
83 (2000).  However, procedural and substantive unconscionability
need not be present in equal amounts.  Armendariz, 24 Cal. 4th at
83.  The two factors are evaluated on a "sliding scale,"
therefore, the more evidence of procedural unconscionability
there is, the less evidence of substantive unconscionability is
needed to render the agreement unenforceable, and vice versa.
Id.  If the opposing party fails to prove the existence of
procedural unconscionability, no finding of unconscionability is
possible, and the court's analysis ends.  Ahmed, 283 F.3d at
1199-1200.  Moreover, California law recognizes that franchise
agreements resemble employment agreements where arbitration
provisions are at issue, as both contexts involve the
franchisee's or employee's livelihood.  Independent Ass'n. of
Mailbox Center Owners, Inc. v. Superior Court, 133 Cal. App. 4th
396, 410 (4th Dist. 2005).
///
///
///

14

## 1.   Procedural Unconscionability

The analysis of procedural unconscionability focuses on "oppression or surprise, due to unequal bargaining power" while substantive unconscionability is based on "overly harsh or one-sided results." Soltani v. Western & Southern Life Ins. Co., 258 F.3d 1038, 1042 (9th Cir. 2001) (citing Armendariz, 24 Cal. 4th at 114). Though procedural unconscionability is generally proven by a showing of contractual adhesion, "[t]here will be cases ... where procedural unconscionability is obvious without the need to establish that the contract is one of adhesion." Nyulassy v. Lockheed Martin Corp., 120 Cal. App. 4th 1267, 1281 (2004).

Plaintiffs contend that the arbitration agreements are procedurally unconscionable because they are contracts of adhesion. Plaintiffs claim that the franchise agreements were standard form contracts with prolix terms, and that Plaintiffs had "no meaningful opportunity to negotiate the majority of [the] terms." Plf's Mem. in Opp. to Def's Mot. 11:14-15. While the filings are unclear regarding which Plaintiff negotiated some of the franchise agreement terms and which negotiated no terms, the parties agree that neither Plaintiff negotiated any aspect of the arbitration provisions. See Plf's Mem. in Opp. to Def's Mot. 11:16-19; Def's Mot. to Dis. 2:21-22. Further, Plaintiffs were in a substantially weaker bargaining position than Defendants. As reported in the UFOCs attached to Plaintiffs' individual declarations in support of their Opposition to Defendants' current Motion, FastBucks is a corporation which in 2004 had over $7,000,000 in assets and over $11,000,000 in revenues.

15

1    Plaintiffs, on the other hand, have not been able to pay

2    themselves a salary from their franchises, "with some losing what

3    amounts to their life savings."  Complaint at ¶¶ 4, 27.

4         Plaintiffs have adequately demonstrated potential oppression

5    through their allegations of an absence of real negotiation and a

6    disparity of bargaining power existing between the parties as

7    franchisor and franchisees.  See Nagrampa v. MailCoups, Inc., 469

8    F.3d 1257, 1282 (9th Cir. 2006) (noting that "California courts

9    have long recognized that franchise agreements have some

10   characteristics of contracts of adhesion because of the vastly

11   superior bargaining strength of the franchisor."); Smith v. Paul

12   Green School of Rock Music Franchising, LLC, 2008 WL 2037721, at

13   *3 (C.D. Cal. 2008) (finding procedural unconscionability where

14   "there is no evidence of real negotiation over the terms of the

15   arbitration clause... [and] ...no indication that Smith could

16   have opted out of the forum selection or choice of law provisions

17   within the arbitration clause.");  See also Kinney v. United

18   HealthCare Services, Inc., 70 Cal. App. 4th 1322, 1329 (4th Dist.

19   1999).

20        Further, Plaintiffs adequately show surprise through their

21   allegations of a prolix agreement drafted by Defendants.  See Id.

22   While Defendants' attempt to negate the claim of surprise by

23   claiming that the arbitration provisions were bolded in each

24   franchise agreement, the copies of the agreements provided to

25   this Court do not corroborate this claim.  See Decl. of Charles

26   Horton, Exhibits 1 and 2.

27   ///

28   ///

The parties also dispute whether Plaintiffs understood from the franchise agreements and UFOCs that any dispute would be resolved in an arbitration proceeding in Texas in accordance with Texas law.  See Def's Reply Mem. 9:21-23; Decl. of Onofrio Pentolino, II ¶4; Decl. of Derek Barrington ¶4.  Regardless, "[w]here an adhesive contract is oppressive, surprise need not be shown." Abramson v. Juniper Networks, Inc., 115 Cal. App. 4th 638, 656 (6th Dist. 2004).

In sum, Plaintiffs have adequately shown some indication of procedural unconscionability.  However, as the evidence of procedural unconscionability is minimal, Plaintiffs must show significant evidence establishing substantive unconscionability in order to invalidate the arbitration provisions under California law.  Accordingly, this Court moves on to examine the extent of substantive unconscionability present in the arbitration provisions.

## 2.   Substantive Unconscionability

Substantive unconscionability stems from a lack of mutuality, and "may generally be described as unfairly one-sided." Gentry v. Superior Court, 42 Cal. 4th 443, 469 (2007).  A lack of mutuality is present in an arbitration agreement if its terms are "so one-sided as [to] shock the conscience." Soltani v. Western & Southern Life Ins. Co., 258 F.3d 1038, 1043 (9th Cir. 2001).

///

///

To avoid a finding of substantive unconscionability, arbitration agreements must contain at least "a modicum of bilaterality." <u>Armendariz</u>, 24 Cal. 4th at 119.

In the instant case, Plaintiffs contend that the arbitration provisions lack mutuality in multiple ways.  First, the arbitration provisions reserve FastBucks' right to seek injunctive relief, while barring similar access to Plaintiffs.  Second, the arbitration provisions limit damages recoverable under the agreement to actual damages, effectively prohibiting consequential, punitive, or exemplary damages.  Third, the arbitration provisions shorten the applicable statute of limitations.  Fourth, the arbitration provisions include place and manner provisions that favor FastBucks.  Finally, the arbitration provisions ban class and consolidated actions.[6]

### a.   Injunctive Relief

Substantive unconscionability can be found where an "agreement requir[es] arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party."  <u>Armendariz</u>, 24 Cal. 4th at 119.

///

///

///

_____

[6] Plaintiffs also argue that the arbitration provisions are substantively unconscionable because they seek to void the Plaintiffs' unwaivable statutory rights under the CFIL through Texas choice of law and forum.  As this Court has discussed the impact of these provisions on Plaintiffs CFIL rights above, it will not repeat the analysis here.

Where both parties to an agreement are bound to arbitration, but the stronger party may seek "other equitable relief" through the court system, without proper justification for this lack of mutuality, California courts consistently have found such arbitration provisions unconscionable. <u>Davis v. O'Melveny & Myers</u>, 485 F.3d 1066, 1081 (9th Cir. 2007); <u>See also</u> <u>Mercuro v. Superior Court</u>, 96 Cal. App. 4th 167, 176 (2nd Dist. 2002); <u>Stirlen v. Supercuts, Inc.</u>, 51 Cal. App. 4th 1519, 1541-42 (1st Dist. 1997).

In the instant case, the arbitration provisions of the franchise agreements reserve FastBucks' right to seek injunctive relief, including "temporary, preliminary, or permanent injunctive relief," at FastBucks' option.  Franchise Agreements ¶ 26.3.  There is no similar exception for Plaintiffs, and thus the arbitration provisions lack a "modicum of bilaterality." <u>Armendariz</u>, 24 Cal. 4th at 119.  This lack of mutuality may be enforceable if Defendants can establish "business realities" as justification. <u>Stirlen v. Supercuts, Inc.</u>, 51 Cal. App. 4th 1519, 1536 (1st Dist. 1997).  However, Defendants' argument that "franchisors will often need emergency relief to prevent trademark infringement against terminated franchisees..." is insufficient.  Def's Reply Mem. 11:13-14.  Under California Civil Procedure Code § 1281.8(b), both parties may seek provisional remedies in court "in connection with an arbitral controversy...."  Cal. Civ. Proc. Code § 1281.8(b).

///

///

///

1  These provisional remedies include "injunctions... attachments,

2  temporary protective orders, writs of possession and appointments

3  of receivers." Stirlen, 51 Cal. App. 4th at 1536 (citing Woolley

4  v. Embassy Suites, Inc., 227 Cal. App. 3d 1520, 1527 (1st Dist.

5  1991). Therefore, "[t]he unilateral right to litigate rather

6  than arbitrate claims... cannot be justified by the need for

7  provisional remedies." Stirlen, 51 Cal. App. 4th at 1536.

8  Defendants fail to provide sufficient justification for this lack

9  of mutuality. The arbitration provisions are substantively

10  unconscionable for purposes of this analysis.

11

12           **b.   Damage Limitations**

13

14      "The principle that an arbitration agreement may not limit

15  statutorily imposed remedies such as punitive damages and

16  attorney fees appears to be undisputed." Armendariz v.

17  Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 103

18  (Cal. 2000). This principle holds true in the franchise context.

19  Id., (discussing Graham Oil Co. v. ARCO Products Co., 43 F.3d

20  1244, 1248 (9th Cir. 1995) (arbitration agreement unenforceable

21  because it did not allow for punitive damages and attorney's fees

22  available under statute). Further, whether punitive or

23  consequential damages are statutorily authorized or "otherwise

24  allowed," arbitration provisions seeking to deprive plaintiffs of

25  these remedies are unconscionable. Independent Ass'n of Mailbox

26  Center Owners, Inc. v. Superior Court, 133 Cal. App. 4th 396,

27  412-413 (4th Dist. 2005).

28  ///

1    In the instant case, the arbitration provisions at issue

2    limit damages recoverable under the agreement to actual damages,

3    effectively prohibiting consequential, punitive, or exemplary

4    damages.  Franchise Agreements ¶ 26.4.  Plaintiffs' unwaivable

5    statutory rights under the CFIL may allow for the recovery of a

6    variety of damages, including punitive, consequential, and

7    exemplary.

8    Further, Plaintiffs' claims of fraud and deceit due to the

9    alleged misrepresentations and omissions made by Defendants, if

10   proven, may also allow for the recovery of punitive or exemplary

11   damages under California law.  "Where it is proven by clear and

12   convincing evidence that the defendant has been guilty of

13   oppression, fraud, or malice, plaintiff may recover damages in

14   addition to the actual damages."  Wolk v. Green, 516 F. Supp. 2d

15   1121, 1134-35 (N.D. Cal. 2007) (discussing Cal. Civ. Code §

16   3294).  As the party who drafted and imposed the damages waiver

17   provision, it is reasonable to conclude that Defendants imposed

18   the waiver "with the knowledge or belief that [Fastbucks] would

19   generally be the defendant," and thus Defendants effectively

20   created a one-sided agreement aimed at limiting their liability.

21   Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1073 (Cal.

22   2003).  Therefore, the arbitration provisions' damage limitations

23   lack mutuality and are also substantively unconscionable.

24   ///

25   ///

26   ///

27   ///

28   ///

21

1                    **c.   Shortening of the Statute of Limitations**

2

3         The arbitration provisions of the franchise agreements bar

4    any claim brought by Plaintiffs against Defendants if not

5    "commenced within one (1) year from the occurrence of the facts

6    giving rise to such claim or action...." Franchise Agreements

7    ¶ 26.4.  Plaintiffs' claims under the CFIL and for unfair trade

8    practices under the California Business and Professions Code

9    §§ 17200-17208 carry either two- or four-year limitations

10   periods.  See Cal. Corp. Code §§ 31303-31304; Gentry v. Superior

11   Court, 42 Cal. 4th 443, 471 (Cal. 2007) (discussing Cal. Bus. &

12   Prof. Code §§ 17200-17208).  Thus, Plaintiffs claim that this

13   contractual shortening of the limitations period is substantively

14   unconscionable.

15        Defendants argue that California permits contractual waivers

16   of statutes of limitations.  Defendants point this Court to

17   Pokorny v. Quixtar Inc., where the Northern District discussed

18   the contractual shortening of limitations periods.  2008 WL

19   850358, at *14 (N.D. Cal. 2008).  The Pokorny court stated that

20   contractual shortening of limitations periods may be enforceable

21   under California law, "if it applies to both parties and the

22   shortened time is still reasonable." Id. (referencing Soltani v.

23   W. & S. Life Ins. Co., 258 F.3d 1038, 1043-44 (9th Cir. 2001)).

24   However the Defendants failed to mention the next sentence in

25   Pokorny, which states that "[w]here the reduction is unilateral,

26   as here, it is substantively unconscionable." Id. (referencing

27   Nyulassy v. Lockheed Martin Corp., 120 Cal. App. 4th 1267, 1283

28   (6th Dist. 2004).

                                   22

1   Further, the general rule allows the shortening of limitations

2   periods where there is an "absence of a controlling statute to

3   the contrary...." Order of United Commercial Travelers v. Wolfe,

4   331 U.S. 586, 608, 67 S. Ct. 1355, 91 L. Ed. 1687 (1947).  In the

5   instant case, the plain text of the arbitration provision

6   shortening the limitations period speaks only to claims "brought

7   by Franchisee against Franchisor," and Plaintiffs' statutory

8   claims carry contrary limitations periods.  Thus, the arbitration

9   provisions' unilateral shortening of the limitations period is

10  substantively unconscionable.

11

12              **d.   Place and Manner Provisions**

13

14      Under California law, "if the 'place and manner'

15  restrictions of a forum selection provision are 'unduly

16  oppressive,' or have the effect of shielding the stronger party

17  from liability, then the forum selection provision is

18  unconscionable." Nagrampa v. MailCoups, Inc., 469 F.3d 1257,

19  1287 (9th Cir. 2006) (citing Bolter v. Superior Court, 87 Cal.

20  App. 4th 900, 909-10 (2001); Comb v. PayPal, Inc., 218 F. Supp.

21  2d 1165, 1177 (N.D. Cal. 2002)).  Plaintiffs allege that the

22  arbitration provisions include place and manner provisions that

23  favor FastBucks, with the intent of maximizing Defendants'

24  contractual advantage, and are thus substantively unconscionable.

25  Bolter, 87 Cal. App. 4th at 910.  Plaintiffs point to provisions

26  requiring Texas choice of law and forum and requiring arbitration

27  to commence two weeks following the initial meeting of the

28  parties.  Franchise Agreements 26.1, 26.2.

1    Defendants argue that Plaintiffs' inconvenience and expense
2  arising out of the place and manner provisions are "not enough to
3  invalidate the forum selection provision in the arbitration
4  clause here." Smith v. Paul Green School of Rock Music
5  Franchising, LLC, 2008 WL 2037721, at *6 (C.D. Cal. 2008)
6  However, in Paul Green the alleged unconscionability of the
7  franchise agreement's place and manner requirements stood alone
8  as the remaining argument against Pennsylvania arbitration. Id.
9  In the instant case, however, it is only one of many factors
10  constituting the arbitration provisions' overall substantive
11  unconscionability.

12    Defendants also seek support from the California Supreme
13  Court's holding in Smith, Valentino & Smith, Inc. v. Superior
14  Court, 17 Cal. 3d 491, 496 (Cal. 1976) (place and manner
15  restrictions are not generally unconscionable because contracting
16  parties "can be held to have contemplated in negotiating their
17  agreement the additional expense and inconvenience attendant on
18  the litigation of their respective claims in a distant forum").
19  Where parties understood the agreement to require arbitration in
20  a distant forum, it is assumed that adequate consideration was
21  received in exchange. Id. Here, the parties dispute whether
22  Plaintiffs understood that the forum provisions discussed in the
23  franchise agreements and the California Appendices required a
24  Texas resolution of any dispute between the parties. Therefore
25  it cannot be said, as a matter of law, that Plaintiffs knowingly
26  agreed to a Texas forum or Texas law.
27  ///
28  ///

24

As discussed above, Defendants have the burden of proving the reasonableness and fairness of the arbitration provisions' choice of law and forum, and they have failed to meet this burden.  Accordingly, the arbitration provisions' place and manner restrictions add yet another layer of substantive unconscionability.

### e.   Waiver of Class and Consolidated Actions

Plaintiffs do not seek class action status for this dispute. However, as "multiple defects indicate a systematic effort to impose arbitration... as an inferior forum..." the arbitration provisions' ban on class and consolidated actions adds further weight to a finding of substantive unconscionability. Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 124 (Cal. 2000); Franchise Agreements 26.2.  California law has long recognized the importance of class action litigation, and has codified the right to consolidate arbitrable disputes.  See Cal. Code Civ. Pro. 1281.3; Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court, 133 Cal. App. 4th 396, 410-11  (4th Dist. 2005).  Where a contractual class action ban effectively limits the rights of just one contracting party, the agreement is substantively unconscionable.  Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1176 (9th Cir. 2003). It is hard to imagine any situation in which a franchisor could bring a class action suit against a franchisee.  See Id.

///

///

25

1    Defendants seek to avoid this problem by stating that they

2    would not seek to enforce the class action ban.  However, this

3    concession is immaterial as the unconscionability of an agreement

4    is determined as of the time the contract was formed.

5    Armendariz, 24 Cal. 4th at 114.  The franchise agreements, as

6    signed, each contained unconscionable bans on class actions

7    within their arbitration provisions.  Combined with the entirety

8    of substantively unconscionable requirements contained in the

9    arbitration provisions, and Plaintiffs' showing of procedural

10   unconscionability, the evidence of unconscionability in the

11   arbitration provisions is overwhelming.  These provisions are

12   thus "permeated by unconscionability... [and] should not be

13   enforced."  Id. at 126.  Accordingly, Defendants' Motion to

14   Dismiss or Stay the Action must be denied.

15

16                            **CONCLUSION**

17

18   Based on the foregoing, Defendants' Motion to Dismiss or

19   Stay the Action is hereby DENIED.

20   IT IS SO ORDERED.

21
 Dated: August 19, 2008
22

23

24   _____
     MORRISON C. ENGLAND, JR.
25   UNITED STATES DISTRICT JUDGE

26

27

28

                                 26